DECISION
The plaintiff has moved for a new trial after a jury has declined to find the defendant Town negligent in its maintenance of a portion of America's Cup Boulevard.
At the time of this accident in July of 1995, Mrs. Newman-Simkins and her husband, Julius, were first time visitors to Newport. They had disembarked from a cruise ship with the purpose of taking an afternoon tour of the city. Part of their walking tour included a portion of America's Cup Boulevard, where trees had been planted in sidewalk wells to beautify the area. Mrs. Newman-Simkins testified that while she was strolling she all of a sudden felt a depression in the sidewalk. Her feet were "not equal to one another" and she "went down." She had stepped in the "cut-out" for the tree which contained bark or mulch resulting in a footing different from the cement sidewalk. Unfortunately, in an attempt to break her fall, plaintiff fractured her wrist and suffered excruciating pain. That pain, which she described as "tremendous", "throbbing", and "shooting", continued for six to eight weeks and thereafter in varying intensity. Mr. Simkins testified similarly about the accident, but acknowledged that the tree wells stood out in the sidewalk, being a different color and texture. The theory upon which Mrs. Newman-Simkins hoped to prevail was that the sidewalk was defectively designed and/or negligently maintained. To this end, she engaged L. Robert Smith, a civil engineer whose firm regularly designs and oversees the construction of sidewalks.
Mr. Smith explained that the tree well in question was located near the entrance to American Cafe, with shrubs growing through the adjacent fence and protruding over the sidewalk. The effect was to reduce the availability of walking surface from 33" to 21". The witness calculated the one foot reduction based on 6" of actual shrub protrusion and 6" he described as a "shy zone", (i.e., the amount of space a pedestrian would be inclined to move in order to clear an obstruction.) Most pedestrians need more space to transverse and thus it is quite probable, Mr. Smith opined, that an individual would inadvertently step into the tree well and fall. Additionally, because the wells are filled with organic material which decomposes, it is necessary to regularly inspect conditions to insure a level surface. Acceptable alternatives to this design would be an unyielding iron grate or a fill of crushed stone or bricks. In any event, Mr. Smith concluded that the design, location, and maintenance of the tree well constituted a hazardous condition.
The plaintiff presented Barbara Petrarca, the supervising landscape architect for Rhode Island's Department of Transportation. She testified that the tree warden of Newport, as well as numerous wardens throughout the state, specifically requested that no grates be utilized. The grates impede water flow and can lift above sidewalk level, creating a tripping hazard. Mrs. Petrarca explained that the tree wells on America's Cup Boulevard were designed to accomplish the safe and environmentally sound planting of trees.
The crux of this case in the Court's mind is whether the testimony of the engineering expert is to be endorsed. The Court has no doubt that Mrs. Newman-Simkins was totally credible. She was forthright, genuine and very pleasant.
The jurors were instructed that it was within their discretion to accept all, none or portions of any expert's testimony. Mr. Smith is an expert with excellent credentials who undoubtedly is sincere in the belief he expressed regarding the hazardous condition. The jurors declined to agree.
It is not within this Court's province to disturb any jury decision upon which reasonable minds could differ. It is the rare case when all human beings must be impelled to the same conclusion. The record here clearly demonstrates that this is not such a case. Therefore, the Court is compelled to deny the motion for a new trial.